## BROWN *v*. ATWELL, ADMINISTRATOR.

To give this court jurisdiction over the judgment of a State court, it must appear that the decision of a Federal question presented to that court was necessary to the determination of the cause, and that it was actually decided, or that, without deciding it, the judgment as rendered could not have been given.

MOTION to dismiss a writ of error to the Supreme Court of the State of New York.

*Mr. James Flynn*, for the defendant in error, in support of the motion.

*Mr. John B. Gale, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

Scott brought this action against Brown & Stone, in the Supreme Court of Rensselaer County, New York, alleging in his complaint that one Neer was the owner of a patent for a certain improvement in fire-places and stoves; that Neer had transferred the patent to Scott, who was the owner thereof; that Brown & Stone, being partners engaged in the sale of patent-rights, and having made sales of this patent while it belonged to Neer, continued to do so after its transfer to him, for which they had never accounted. He asked for an account, and judgment for such an amount as should be found due.

Brown & Stone answered, denying generally all the allegations in the complaint.

Stone having died, his death was suggested on the record; and, the cause proceeding against Brown, the issues were referred by stipulation of the parties to a referee for trial. The referee, having heard the case, reported that Scott was the owner of the patent; that Brown & Stone had made sales of the patent in different localities; and that Brown, as survivor, was bound to account to Scott for the proceeds of the sales. After the testimony on the part of the plaintiff was all in before the referee, Brown moved for a nonsuit, assigning for cause, among others, "that under the acts of Congress of the United States concerning letters-patent, and especially the Patent Act of 1836, and especially sect. 11 of that act, Scott's

title, interest, and rights were unaffected by the sales made by Neer and by Stone as his attorney, and therefore that plaintiff has no claim herein based on any such sale." The referee denied the motion. Brown excepted, and then proceeded with his own testimony. No other question was made before the referee as to the effect of the patent laws upon the rights of the parties. Numerous exceptions were taken to the report; but not one of them presented directly any question under these laws. The ruling of the referee on the motion for the nonsuit was not mentioned as one of the exceptions. A judgment was entered against Brown at the special term upon the report, from which an appeal was taken to the general term, where it was affirmed. The record does not show that any question under the patent laws was presented or decided in that court. From the judgment at the general term an appeal was taken to the Court of Appeals, where that judgment was affirmed.

After the judgment was rendered in the Court of Appeals, the following entry was made as part of the record of that court; to wit: —

"On the argument of the appeal herein before this court, it was claimed by said appellant Brown that the act of Congress of the United States, commonly called the Patent Act of 1836, and especially sect. 11 of said act, governed and determined the effect of the several transfers appearing in this case relative to the letters-patent issued to Neer, and determined the right in said patent of all concerned therewith; and that by said act and sect. 11, and the application thereof to the facts shown by the record herein, Scott, at the times of the sales and deeds for proceeds whereof judgment was recovered herein, owned only an undivided half of said patent, and Morrison owned the other half, and that Morrison owned and retained an equal interest with Scott in such proceeds; and that the decision herein that Scott was owner of said patent at the times of said sales and deeds, and his recovery herein as such owner, were therefore erroneous; and further it was claimed by said appellant, that, under said Patent Act, and sect. 11 thereof, said sales and deeds did not *per se,* or in connection with any facts shown by the record, affect Scott, or his interest in said patent, and that said recovery was therefore erroneous, and the decision of this court was against the said claims, and each thereof, thus made by said appellant; and for the particulars and grounds of such decision refer-

ence is hereby made to the opinion of this court, per Justice Folger, which is hereby, for the purposes hereof, made a part of the said record."

In the opinion to which reference is made, and which is therefore to be read as part of and in connection with this certificate, it is said, "Whether, by this permission or agreement given by Morrison to Neer, the latter and his assigns could make a good title for the whole of the patent-right to a vendee thereof, is not the question just here, but whether Scott got by the paper from Morrison to Neer, and by that from Neer to him, the right to claim an account of the whole proceeds of a sale." The court then decides, that, upon the facts as found, Scott had the equitable if not the legal title to the whole patent; and that, although Brown & Stone conveyed in the name of Neer, Scott was by his acts estopped from asserting title as against the several grantees. For this reason it was held that he was entitled to an account by Brown for the proceeds of the sales.

Until the certificate of the Court of Appeals, it nowhere appears in the record that any question was raised as to the effect of the patent laws upon the original title of Scott or his ownership. The only question presented under these laws was when Brown moved for a nonsuit; and that was for the reason, that, upon the proof as made, Scott's interest had never been sold. Whatever title he had he retained, as was claimed; and consequently he had no interest in the moneys received as the consideration for the sales actually made. This presented a principle of general law, and not of patent law alone. This question the Court of Appeals disposed of by the application of the doctrine of estoppel.

We have often decided that it is not enough to give us jurisdiction over the judgments of the State courts for the record to show that a Federal question was argued or presented to that court for decision. It must appear that its decision was necessary to the determination of the cause, and that it was actually decided, or that the judgment as rendered could not have been given without deciding it. *Commercial Bank of Cincinnati* v. *Buckingham's Executors*, 5 How. 341; *Lawler et al.* v. *Walker et al.*, 14 id. 154; *R.R. Co.* v. *Rock*, 4 Wall. 180; *Parmelee* v. *Lawrence*, 11 id. 38.

The same cases also establish the further rule, that "the office of the certificate, as it respects the Federal question, is to make more specific and certain that which is too general and indefinite in the record, but is incompetent to originate the question."

These principles dispose of this case. Brown & Stone confessedly sold as agents. The money they received was not their own. They were accountable for it to some one. Upon the record proper, they do not appear to have claimed that the title of Scott was defective under the patent laws: on the contrary, they in effect conceded his title, and sought to escape accountability to him because they had not conveyed it away. The decision of the Court of Appeals went no further than to dispose of this defence. That did not present a Federal question, and it ended the case.

*Writ dismissed for want of jurisdiction.*