KENYON *v.* KNIPE *et al.*   SAME *v.* SQUIRE.   SAME *v.* SQUIRE *et al.*

(*Circuit Court, D. Washington, N. D.*   June, 1891.)

**1. FEDERAL COURTS—JURISDICTION—TRANSFER OF CAUSES.**
　　The Washington, Dakotas, and Montana enabling act, §§ 22, 23, provide for the transfer to those courts, upon the written request of the proper party, of those cases pending in the territorial supreme court of which the circuit and district courts would have had jurisdiction under the laws of the United States, had they been in existence at the commencement of the actions. *Held*, that the facts necessary to give the federal courts jurisdiction are properly shown in the petition for transfer, or in affidavits accompanying it.

**2. SAME—RIPARIAN RIGHTS—LOCAL LAW—FEDERAL QUESTION.**
　　Riparian or littoral rights are not an appurtenance of the land, but a mere incident of its ownership, arising out of the local or common law; and a grant by the United States of the land is not such a conveyance of the riparian rights as will give jurisdiction to a federal court of a contest over such rights, as involving a federal question.

**3. SAME—TITLE OF LAND BELOW HIGH WATER.**
　　Whether the grantee of land on the shores of a navigable bay, under a grant by the United States. takes such an interest in the soil below high-water mark as will enable him to make a valid conveyance thereof, depends upon the local law of the state where the land is situated, and is not a federal question, giving jurisdiction to the federal courts.

**4. SAME—NUISANCE IN NAVIGABLE WATERS.**
　　In the absence of a federal statute assuming police jurisdiction of the navigable waters within the limits of a state, a contest as to whether certain erections therein are a public nuisance presents no federal question.

**5. Same—Jurisdictional Amount.**
But where a cause so transferred seeks to abate a nuisance caused by obstructions in navigable waters, and the petition fails to show that the plaintiff has suffered damages to the jurisdictional amount, the federal court cannot take jurisdiction, and the case must be remanded.

On Motion to Remand.

*Howe & Corson*, for plaintiff.

*Thos. Burke* and *J. C. Haines*, for defendants.

Knowles, J. These cases were all argued at the same time, and submitted together. Except in one particular, the same legal points are presented in each; and what I have to say upon them will, except on this one point, apply to all of them.

These cases were tried in the territorial district court of the third judicial district of the territory of Washington. From the several judgments rendered in these cases against him, the plaintiff appealed to the supreme court of said territory. Pending said appeal, Washington Territory ceased to exist, and the state of Washington was organized and admitted into the Union. By virtue of the provisions of sections 22 and 23 of the enabling act of congress, providing for the formation of constitutions for the states of North and South Dakota, Montana, and Washington, and for the admission of such new states into the Union, and by virtue of the constitution of the state of Washington, the supreme court of the state of Washington became the successor of the supreme court of the territory of Washington as to all cases pending therein, except those of which the United States district or circuit courts created for said state of Washington by said enabling act might have had jurisdiction, under the laws of the United States, had they existed at the time of the commencement of such causes. As to these causes, the above-named United States courts became the successor of said supreme court. In section 23 of the said enabling act, it is provided that, in all civil actions, causes, and proceedings in which the United States is not a party, transfers shall not be made to the circuit and district courts of the United States except upon the written request of one of the parties to such action or proceeding filed in the proper court, and in the absence of such request such cases should be proceeded with in the proper state court. This proviso limits the transfer of all civil cases, in which the United States is not a party, to the United States courts, to those in which a written request is made; excepting, perhaps, certain civil cases of which the state court could not receive jurisdiction, even though the same might be conferred by an act of congress. Without this written request, except in the cases named, there can be no transfer from a state to the United States courts in civil actions. The written request is to be made to the proper court. There might be some doubt as to what is the proper court, were it not provided that, in the absence of such request, such causes should be proceeded with in the proper state courts. It must be understood that, until such written request is made, the cause is pending in the proper state court, and to this the request must be made, and this must order the transfer.

The next question presented is, how must it appear that the cause sought to be transferred is one of which either of the United States courts for Washington would have had jurisdiction at the time the cause was commenced, had they existed? It is urged in this case that it must have so appeared in the record as filed in the supreme court. There was no law which required such facts to appear in the record in the territorial district or supreme court. They were courts of general, not special, jurisdiction, such as are the courts of the United States. It is not usual to allege citizenship of the parties in a court of general jurisdiction. Such allegations, as a rule, in the courts, are treated as surplusage. To make a construction of the statute under consideration which would prevent a citizen of another state from having his cause transferred to the United States court, unless his citizenship and that of his adversary appeared in the record as filed in the supreme court of the state, would in a great measure render the same valueless, and of no practical benefit to the parties intended to be benefited by its provisions. The more just and reasonable rule, and the one which has been followed to some extent elsewhere, is to allow the facts to be shown in the petition for removal, which would give the United States court jurisdiction, or by an affidavit accompanying the petition or written request or motion for a transfer. If these facts are disputed, there can be an issue made in the court to which the cause is transferred, and their truth determined in that tribunal. In this case the appellant filed a petition setting forth the facts which he conceived gave jurisdiction to this court. These facts are not controverted. In the motion to remand now presented for determination, it is urged that these facts are not sufficient. In this petition the appellant bases the jurisdiction of this court upon these propositions or groups of facts: (1) That the grant of the United States to A. A. Denny, bordering upon Elliott bay, conveyed also to him certain riparian or littoral rights, which are disputed by the appellees. (2) That it is urged by the appellees as a defense that this grant, conveying to said Denny the land bordering on the premises named in the grant, also conveyed the land below high-water mark in said Elliott bay, a portion of which has been conveyed to the appellees. (3) That the obstructions complained of by appellant in said bay are a public nuisance in the navigable waters of said bay, and also a private nuisance to appellant.

After a careful examination of the records, I am unable to find wherein it presents any dispute as to whether or not the patent to Denny of his land bordering on Elliott bay conveyed to him littoral or riparian rights. It is true that the answer does deny appellant's littoral rights, not because the grant to Denny does not give them, but because the appellees have a conveyance to the soil under the bay from the said Denny which give them these rights. Both are claiming their rights from the same source. Under the following authorities, this would exclude the jurisdiction of this court: *Romie* v. *Casanova*, 91 U. S. 379; *McStay* v. *Friedman*, 92 U. S. 723. But it may be urged that, under the issues presented, the appellees might raise the question that the grant to Denny

did not convey to him littoral rights. It is not enough for a record to show that a federal question might be raised in deciding the cause. It must show that a federal question was in fact raised, or that the decision of a federal question was in fact raised, which it would be necessary to decide in rendering judgment in the cause. *Bolling* v. *Lersner*, 91 U. S. 594; *Brown* v. *Atwell*, 92 U. S. 327. I am unable to see up to this time why it is necessary to decide in this case whether or not the grant to Denny did convey to him any littoral rights in Elliott bay. But let it be admitted that this issue is presented; that the appellant asserts, and the appellee denies, this right. Does this issue present a federal question? I am satisfied it does not. The grant to Denny of the premises which include the lots claimed by appellant did not grant to Denny any littoral rights, although said land touches upon the waters of Elliott bay. Littoral rights do not come to the owner of land bordering upon navigable waters as a part of his grant. He owns such rights by virtue of his ownership of the land. These rights come to him by the local or common law of the land, and not as a grant. That I may be fully understood, let me illustrate. At one time, in some of the states, a citizen was an elector only when he owned property worth a stated amount. The conveyance of property worth this amount to a citizen who possessed no property resulted in his becoming an elector. The conveyance did not make him an elector, but the law, on account of the value of property. So, in this case, the conveyance to Denny did not give him littoral rights, but the law, on account of his becoming the owner of the premises granted. In Gould on Waters (section 179) that author says upon this subject:

"Riparian owners upon navigable fresh rivers and lakes may construct in the shoal waters, in front of their land, wharves, piers, landings, and booms in aid of, and not obstructing, the navigation. This is a riparian right, being dependent upon title to the bank, and not upon title to the river-bed. Its exercise may be regulated or prohibited by the state; but, so long as it is not prohibited, it is a private right, derived from a passive or implied license by the public. As it does not depend upon title to the soil under water, it is equally valued in those states in which the river-beds are held to be public property, and in those in which they are held to belong to the riparian proprietors *usque ad filum aquæ.* This right is a mere franchise in those localities where navigable fresh waters are public property."

There is no difference between tide-waters and navigable fresh waters, as to the littoral rights here discussed. Id. § 148. In some states this right is property, and, if valued, cannot be taken by the public from the owner without just compensation. In other states no compensation is allowed to an owner deprived of such rights for a public use. If the right can be termed a "license by the public," or a "franchise," it can hardly be said to be an appurtenance to land granted. While the term "appurtenance" may he found applied to this right, I am sure, upon a review of all the authorities, it will be found that it is not an appurtenance granted with land upon the margin of navigable waters. The views here expressed may be in conflict with the views expressed in the case of *Case* v. *Toftus*, 39 Fed. Rep. 730. The very eminent judge,

DEADY, who delivered the opinion in that case, did not seem to consider the jurisdiction of the court, but seemed to have treated the case as though this was admitted from the fact that the title of the littoral proprietor to his land on the margin of Yaquina bay was derived from the United States. All that is said upon the subject of jurisdiction is: "The suit was brought in the circuit court of the state for the county of Barton, and removed here on the ground that the defense to the same arises under the laws of the United States." Wherein the defense raises a question under the laws of the United States is not stated. As to the general conclusions reached upon the subject of littoral rights in that case, I do not suppose there can be much doubt.

The next point urged—that the appellees claim the soil below high-water mark in front of appellant's land by virtue of a conveyance from the common grantor, Denny—raises no federal question. Whether Denny was entitled to such lands depends upon the local law. Certainly, the United States never pretended to convey such lands by virtue of a patent to lands bordering on Elliott bay. *Pollard* v. *Hagan*, 3 How. 212. If any such right is recognized, it must be by virtue of the local law. In the case of *Barney* v. *City of Keokuk*, 94 U. S. 324, after speaking of the fact that for many years there had been a confusion of navigable waters with tide-waters, and that for two generations erroneous views as to admiralty jurisdiction had been held by the United States courts, Justice BRADLEY, speaking for the court, says:

"And under like influences it laid the foundation in many states of doctrines with regard to the ownership of the soil in navigable waters above tide-water at variance with sound principles of public policy. Whether, as rules of property, it would now be safe to change these doctrines where they have been applied, as before remarked, is for the several states themselves to determine. If they choose to resign to the riparian proprietor rights which properly belong to them in their sovereign capacity, it is not for others to raise objections. In our view of the subject, the correct principles were laid down in *Martin* v. *Waddell*, 16 Pet. 367; *Pollard* v. *Hagan*, 3 How. 213; *Goodtitle* v. *Kibbe*, 9 How. 471. These cases related to tide-waters, it is true; but they enunciate principles which are applicable to all navigable waters. And since this court, in the case of *Genesee Chief* v. *Fitzhugh*, 12 How. 443, has declared that the great lakes, and other navigable waters of the country above as well as below the flow of the tide, are in the strictest sense entitled to the denomination of 'navigable waters,' and amenable to the admiralty jurisdiction, there seems to be no reason for adhering to the old rule as to the proprietorship of the beds and shores of such waters. It properly belongs to the states, by their inherent sovereignty, and the United States has wisely abstained from extending (if it could extend) its surveys and grants beyond the limits of high water. The cases in which this court has seemed to hold a contrary view depended, as most cases must depend, on the local laws of the state in which the lands were situated."

In these remarks it most clearly appears that as to what are the rights of riparian proprietors to lands below high water is a matter for the states. Where there is no conflict between the states and national government or its laws, what are the rights of a sovereign state in respect, at least, to property within its borders, is for the state itself to determine. *Mayor,*

*etc.*, v. *Miln*, 11 Pet. 102. Whatever rule it chooses to establish as to the ownership of lands beneath the navigable waters within its boundaries, the United States courts in a proper case will enforce. It is not within the province of the United States courts to establish that rule for a state. Whether or not the appellees acquired any right to any of the land in Elliott bay below high-water mark is peculiarly a matter for the state courts to determine, and one of great importance in Washington. If, as said above, the state chooses to abandon its right to such lands in favor of the riparian proprietors, no one outside of the state has a right to object.

It may be argued that this cause originated when Washington was a territory, and that the United States courts might determine this question in a territory. Let it be admitted. But the jurisdiction of this court is now under consideration. As to whether or not it would have jurisdiction depends upon a supposition. If Washington had been a state in the Union, and this court had been in existence when this cause was commenced, would it have had jurisdiction of it? With this view in question, it must be that there can be no greater right in this court to hear and determine this case than as though commenced since the state was admitted into the Union. *Dorne* v. *Mining Co.*, (S. D.) 44 N. W. Rep. 1021. As soon as the state was admitted into the Union, this matter became a state question.

The last point which it is urged gives this court jurisdiction is this: Appellant urges that the obstructions put in Elliott bay by appellees is a public nuisance, which interferes with navigation. There has been found no statute of the United States which assumes police power over the navigable waters of the state of Washington. Until there shall be enacted by the congress of the United States some statute assuming such jurisdiction, this court has no jurisdiction to determine as to whether or not an erection in the waters of Elliott bay is a nuisance. This is again a matter within the jurisdiction of the state court. In the case of *Bridge Co.* v. *Hatch*, 125 U. S. 1, 8 Sup. Ct. Rep. 811, this point was fully determined; and it was there held that as to whether or not an obstruction placed in navigable waters was a nuisance, in the absence of the congressional statute upon the subject, did not present a federal question. The fact that the obstructions complained of were a private nuisance certainly raises no such question.

*Kenyon* v. *Knipe et al.* In this case the complaint shows that the appellant claims that he has been damaged in the sum of $1,000. This would be sufficient to show that, as to amount, this court would have had jurisdiction had it existed at the time the suit was commenced. But in the cases of *J. Gardner Kenyon* v. *Watson C. Squire*, and *J. Gardner Kenyon* v. *Watson C. Squire* and *John R. Williams*, the complaints fail to show that the appellant had been damaged to any amount by the nuisance complained of. The petition filed in each of these cases shows that the injuries complained of are private nuisances, causing special and irreparable injury and damage to appellant, exceeding in money the sum of $5,000, exclusive of interest and costs. The issue presented is, would

this court have had jurisdiction at the time the suit was instituted? The above statement in the petition does not refer to this time. The amount of damages stated must be considered the damages suffered by the appellant at the date that petition was filed,—January 13, 1890. It must be considered as a statement of the damage suffered by appellant at that date, and not the date of the commencement of the suit. It is a settled rule in the federal courts that their jurisdiction must appear affirmatively in the record. No amount in dispute sufficiently appears in the record in the two cases named to give this court jurisdiction. If I should be mistaken as to the views I have presented as to there being a federal question presented in these cases, there appears to me no doubt but that the causes last named should be remanded, because the damage for the injuries complained of do not appear to be sufficient to have given this court jurisdiction at the time the suits were commenced. All of the cases submitted are remanded to the supreme court of Washington for its consideration.