GEORGE KIMMELL *v.* TITUS B. WILLARD'S ADMINIS-
TRATORS, AND THE PRESIDENT, DIRECTORS AND COM-
PANY OF THE FARMERS AND MECHANICS' BANK OF MI-
CHIGAN.

A subsequent mortgagee has a right, under the statute, (R. S. 501, § 10,) to redeem premises sold on foreclosure of a prior mortgage.

Where a mortgage is foreclosed by advertisement under the statute, (R. S. 501, Ch. 8,) for a default in the payment of one of several instalments, and the mortgaged premises are bid off for the amount of such instalment only, they are thereby for ever disencumbered of the mortgage.

*Semble,* that a mortgagee might protect himself against such consequence of a statute foreclosure for one of several instalments, either by bidding off the premises for the whole sum secured by the mortgage, or, by having them exposed to sale, charged expressly with the payment of the future instalments.

APPEAL from the Court of Chancery.

The complainant filed his bill in the court below, against the defendants, in the ordinary form, to foreclose a mortgage upon certain real estate in the village of Niles, Berrien county, executed by Willard in his life time, to wit, on the 25th day of November, 1835, and conditioned for the payment of $1000 in four years from the date of the mortgage, and interest thereon, payable annually. Both the principal and interest secured by the mortgage were due, when the bill was filed. The President, &c. of the Farmers and Mechanics' Bank, who, as subsequent incumbrancers of the mortgaged premises, were made parties, interposed a plea, stating that they were the assignees, for a valuable consideration, of a mortgage upon the premises, executed by one Pardon Wilder, to Willard in his life time; and that, having filed a bill for that purpose, they had obtained a decree of the Court of Chancery for a foreclosure of the same, and for a sale of the premises at a day not

then named;—that, on or about the 25th day of December, 1838, the complainant proceeded to foreclose the mortgage executed by Willard, and mentioned in the bill in this cause, by advertisement pursuant to the statute, claiming that there was due thereon $210 ; and that such proceedings were had, that the premises were afterwards struck off and sold to the complainant, under the statute foreclosure, for the sum of $235 ;—that, on the 28th day of March, 1841, which was before the time for redemption of the premises had expired, the bank as assignees from Willard of the mortgage executed by Wilder, tendered to the complainant the sum of $282, (that being the amount for which the premises were bid off by him under the statute foreclosure, and interest at the rate of ten per cent per annum,) and requested the complainant to be permitted to redeem the premises, which tender the complainant refused to accept.    The plea concludes with the usual averment, that the bank had always been ready and willing to pay the said sum of $282, and brought the same into court, &c.    An answer in support of the plea was also filed with it, but this it is unnecessary to notice particularly.

The cause having been argued upon the bill, and the plea and answer of the bank, and the answer of the other defendants, the Chancellor, on the 21st day of June, 1842, pronounced a final decree, sustaining the plea, and dismissing the bill with costs ; to reverse which, an appeal was taken by the complainant to this Court.

*N. Bacon,* for complainant.

*Greene & Dana,* for defendants.

WHIPPLE, J. delivered the opinion of the Court.

The question which the facts in this case present for our determination, is, whether the premises described in

the bill were disencumbered of the mortgage executed by Willard to the complainant, by the previous foreclosure of the same by advertisement, pursuant to the statute, for instalments of interest due, and by the tender of the bank to the complainant, who became the purchaser of the premises on such foreclosure, of the amount due on the certificate of sale.

The determination of this question must depend chiefly upon the construction and effect given to the provisions of Ch. 8, Tit. 3, Part 3 of the Revised Statutes, entitled, "Of proceedings to foreclose and redeem mortgages," the only material provisions of which are the following :

"Sec. 1. Every mortgage of real estate, containing therein a power to the mortgagee or any other person, to sell the mortgaged premises, upon default being made in any condition of such mortgage, may be foreclosed by advertisement, in the cases and in the manner herein after specified."

"Sec. 2. To entitle any party to give a notice as herein after prescribed, and to make such foreclosure, it shall be requisite,

*First.* That some default in a condition of such mortgage shall have occurred, by which the power of sale became operative ; and,

*Second.* That no suit or proceeding shall have been instituted at law, to recover the debt," &c.

Sections 3 and 4 prescribe the manner of conducting the proceedings.

"Sec. 5. When any real estate offered for sale by virtue of the provisions of this chapter, shall consist of several distinct lots, tracts, or parcels, such lots, tracts or parcels shall be separately exposed for sale ; and no more of any real estate shall be exposed for sale than shall appear necessary to satisfy the mortgage."

"Sec. 6. Whenever any real estate shall be sold ac-

cording to the provisions of this chapter, the officer or other person making the sale, shall make and deliver to the purchaser, a certificate under his hand, setting forth a description of the premises sold, the sum paid for each distinct lot or parcel, and the time when the purchaser will be entitled to a deed," &c.

" Sec. 7. The officer or person making the sale shall, within ten days after the time of the sale, cause a duplicate of such certificate to be recorded in the book of mortgages in the registry of deeds of the county in which the premises are situated," &c.

Sec. 8, provides for the manner of perpetuating the evidence of the sale.

" Sec. 10. Within two years from the time when such sale shall have been made, the mortgagor, his executors, or administrators, or any person lawfully claiming from or under him or them, may redeem any estate sold, as herein before provided, or any distinct lot or tract thereof, that may have been separately sold."

" Sec. 11. In such case, the person intending to redeem the estate sold, or any lot or tract thereof, shall pay to the purchaser," &c. " the sum which was bid on the sale of such estate, or on such lot or tract thereof as it is intended to redeem, together with the interest on that sum from the time of the sale at the rate of ten per cent a year."

" Sec. 12. Upon such payment being made by any person so entitled to redeem any real estate sold as before provided, the sale of the premises so redeemed, and the certificates of such sale, shall be null and void, and *the said premises shall be for ever disencumbered of the mortgage* by virtue of which they shall have been sold."

Sec. 13, provides that the officer making the sale shall execute to the purchaser a deed of the premises in case they are not redeemed.

Sec. 16, provides that subsequent mortgagees shall have the benefit of any surplus money that may remain, after payment of the amount due on the mortgage by virtue of which the equities of the mortgagor were foreclosed.

1. Having thus stated the provisions of the statute, let us inquire, first, whether the President, Directors and Company of the Farmers and Mechanics' Bank had a right to redeem? If the language employed in the tenth section is to be interpreted according to its strict legal and technical sense, there can exist no doubt respecting their right in this particular. They were "persons claiming under the mortgagor." We know that it is competent for courts to restrain and limit the meaning of general terms employed in a statute, provided they are justified in so doing by the manifest intention of the law maker, to be gathered from the whole law, its scope and effect; but in the present case, we can see no ground for the application of this rule of construction.

2. What was the necessary legal effect of the purchase of the premises, by the complainant, under the statute foreclosure? A literal and strict construction of the 12th section, answers this question. The premises became for ever disencumbered of the mortgage, by virtue of which they were sold. Is it within the legal competency of a court of equity to control the operation of language thus clear and strong? Certainly not, unless the other provisions of the statute will warrant it. A very critical examination of the whole chapter, and of the able and ingenious written argument of the counsel for the complainant, has failed to convince us, that we would be justified in restraining the obvious import of the language contained in the 12th section. I think it clear that, without reference to that section, the direct consequence of a statute foreclosure for the payment of an instalment, is, in fact, to disencumber the estate of that mortgage. The

right of the mortgagor to regard the mortgaged premises as a further pledge for the payment of subsequent instalments, is thereby exhausted.

It may be that, applied to the present case, such a construction would appear harsh and inequitable; but we are bound to expound the law as we find it; we cannot venture on ground which is forbidden us, and control or defeat the legislative will, when that will has been clearly expressed. Judicial legislation cannot and ought not to be tolerated, however consonant to the principles of natural justice it may be, to mould a law, so as to adapt it to the equities of each case as it arises. The constitution has wisely prescribed the sphere within which each department of the government is to revolve; and we may not, without doing violence to the constitution, overstep the boundaries so clearly defined for our action. We have felt every inclination to relieve the complainant from the difficulties which surround him; for, by so doing, we should advance the real justice of the case, without doing violence to the rights, either of the mortgagor or subsequent encumbrancers. But it is precisely one of the many embarrassments which have grown, and must continue to grow, out of the ever fluctuating legislation of the present day, and the absence, in many of our important laws, of that clearness and precision in language and style, which are in every point of view so desirable. The community must suffer the penalty, until an appropriate remedy can be applied. It is in no wise remarkable, that the acutest lawyers should have been misled, with respect to the effect of a foreclosure like the present case. The present is not the first instance, in which the statute in question has led professional gentlemen of high character into difficulty. We do not wish to be understood as affirming that there exists no remedy for the evil; for, according to our conception of the rights of a mortgagee,

we entertain no doubt that it would have been legally competent, in the present instance, for the party to have protected himself against the evils which have befallen him.   He might, we think, have bidden for the premises, when exposed to sale, the whole amount unpaid on the mortgage, whether for interest or principal; and any attempt on the part of the mortgagor to enforce, in a court of law, the payment of the difference between the amount actually due and the amount of the bid, would have been averted by the interposition of a court of equity, which would, under the circumstances, regard the equitable rights of the mortgagee as countervailing the strict legal rights of the mortgagor.   In other words, equity would regard the money realized from the sale, as the primary fund for the payment of instalments not due; inasmuch as the effect of the sale would be to disencumber the estate of the mortgage, which before stood as a pledge for the payment of the debt.   Upon this point we have no doubt.

Again, it would have violated no principle of law, to have exposed the premises for sale, charged expressly with the payment of the future instalments.   In such case, the sale would have discharged the estate of the mortgage, but still a court of equity would lend its aid to the mortgagee, and regard the estate in the hands of a purchaser as charged with the debt.   This aid would be granted, not because of any claim arising out of, or by virtue of the mortgage, but in consequence of its having operated so as to discharge the mortgagor from all personal liability ; and for the more obvious reason, that an agreement would be implied, as between the mortgagee and purchaser, to consider the balance due the former as a lien, in equity, upon the premises.

*Decree affirmed.*