The State, to use of Bank of Missouri, Plaintiff in Error,
v. Hawkins *et al.*, Defendants in Error.

1. A. was appointed attorney for a bank for a term of two years. His compensation as such attorney was three per cent. upon all collections made by him in the county in which the bank was located, and five per cent. upon all collections made out of said county. During his term of office, he obtained judgment in favor of the bank upon a claim deposited in his hand for collection. *Held*, that he was entitled to his three per cent. commission on the amount recovered, whether he received the money on the judgment during his term of office or not.

2. An attorney of record in a cause is authorized to receive payment of a judgment recovered therein. Those dealing with such an attorney will not be affected by any arrangements entered into by him with his client, or by a revocation of his authority of which they have no notice.

*Error to Marion Circuit Court.*

This was an action against Benjamin M. Hawkins and his sureties on his official bond. The breach assigned was the making of a false return of a writ of execution. The cause was tried by the court without a jury. The facts as they appeared in evidence are substantially as follows: On the 3d of February, 1855, by a resolution of the board of directors of the Branch of the Bank of the State of Missouri at Palmyra, Thomas L. Anderson was declared duly elected attorney for the bank " for two years next ensuing." Ander-

son was to receive the same compensation as that paid to his predecessors in office—three per cent. on all collections made in the county of Marion and five per cent. on all collections made out of said county.   During his term of office, he instituted suit in favor of the bank upon a bill of exchange deposited in his hands for collection.   On the 4th of December he recovered judgment in this suit against the defendants therein, William Shoot and others.   On the 31st of January, 1856, the board of directors of the bank elected John D. S. Dryden attorney of the bank in the place of said Anderson.   On the 20th of April, 1857, the board of directors passed the following resolution: " *Resolved*, that Thomas L. Anderson, Esq., the late attorney of the Branch of the Bank of the State of Missouri at Palmyra, be, and he is hereby, requested and directed to surrender to John D. S. Dryden, the present attorney, the charge, conduct and management of all suits, judgments and executions now pending for debts due this Branch, and to deliver to said Dryden all notes, bills and evidences of debt due this Branch in his (said Anderson's) possession."   A copy of this resolution was furnished to Anderson on the 23d or 24th of April.   On the 29th of April, 1857, Anderson received from Shoot, one of the defendants in said suit, the amount of said judgment. On the same day he tendered said sum so received, less three per cent. thereof, to the cashier of the bank.   The cashier refused to receive any thing less than the whole amount of the judgment on the ground that Anderson was not attorney of the bank and hence not entitled to charge commissions. Previous to the payment of the amount of the judgment to Anderson, and early in April, said Shoot had, in an interview with the cashier of the bank, stated that " he wanted no execution issued" on the judgment in the above mentioned suit.   The cashier, in reply, stated that the matter was beyond his control, and referred him to the attorney of the bank, Mr. Dryden, as having the matter in his charge.   On the 12th of May, 1857, Mr. Dryden, as attorney for the bank, procured the issuing of an execution on said judgment

against Shoot and others.   On this execution, Mr. Dryden's name was endorsed as attorney for the bank.   On this execution, on the 29th of May, 1857, Mr. Anderson made the following endorsement : " The debt and interest on the within execution has been paid to me in full, and the sheriff will return this execution satisfied.   May 29, 1857.   Thomas L. Anderson, attorney for plaintiff."   In obedience to this direction, the sheriff did, on the first day of June, 1857, return said execution " satisfied, by order of plaintiff's attorney." Whereupon the present suit was instituted against the sheriff and his sureties on his official bond for making a false return.

The court gave the following instructions at the instance of the defendants : " 1.  If the debt against Shoot and others was placed by plaintiff in the hands of Thomas L. Anderson, as attorney at law, for collection, under an agreement that said Anderson should have for his services in collecting said claim three per cent. on the amount collected, and that under said agreement said Anderson instituted suit against said Shoot and others and obtained judgment, and that before the execution issued said Shoot paid to said Anderson the full amount of said debt, and that said Anderson tendered the full amount so collected to plaintiff less three per cent. for his services, and that the sheriff was notified of the above facts by said Anderson and directed by said Anderson to return said execution satisfied, then the plaintiff can not maintain this action and the verdict should be for defendants.   2. If Thomas L. Anderson was the attorney of record, a payment to him by the defendants in the execution of the amount due is a discharge of the judgment by the law of Missouri, and it was his duty to stop the execution, and the sheriff was bound to obey his order."

The plaintiff asked the court to give the following instructions or declarations of law : " 1.  If it appear from the evidence that Thomas L. Anderson, Esq., was appointed by the relator her attorney on the 3d of February, 1855, to hold for the term of two years next thereafter, and that his said term

State, to use of Bank of Missouri, v. Hawkins.

of two years had elapsed and expired before the receipt by said Anderson of said sum of $886.75 from Shoot and others, defendants in the judgment of the Hannibal court of common pleas, then the receipt of said sum by said Anderson was not a payment to or binding upon the relator, nor a discharge or satisfaction of the judgment of the bank against Shoot and others or any part thereof, and the court ought to find a verdict for the plaintiff. 2. Unless it appears from the evidence in the cause that at the time Thomas L. Anderson, Esq., received the said sum of $886.75 from said Shoot and Westfall, he was the attorney of the said relator, his receipt of the same was not binding on the relator, nor did it discharge the said judgment in favor of the relator against said Shoot and others, and the court should find a verdict for the plaintiff. 3. If it appear from the evidence in the cause that prior to the receipt of the said $886.75 by Thomas L. Anderson, Esq., from Shoot and Westfall, the relator had dissolved the relation of attorney and client between him and her, and revoked his (said Anderson's) authority to receive and collect the money due and owing on said judgment of the Hannibal court of common pleas, then the receipt of said sum of money by said Anderson was not binding upon the relator, nor did it discharge said judgment or any part thereof. 4. Although it may appear from the evidence in the cause that Thomas L. Anderson, Esq., was the attorney of the relator, the bank, in the recovery of the judgment in the common pleas against Shoot and others, yet if it further appear from the evidence that, prior to the receipt of said sum of $886.75 by said Anderson from the defendants in said judgment, the relator had dissolved the relation of attorney and client between him and her, and revoked his (said Anderson's) authority to receive and collect the money due and owing on said judgment, and that the defendants in said judgment, prior to the receipt of said sum by said Anderson, had notice of the said revocation of said Anderson's authority, then the receipt of said sum of money by said Anderson was not binding upon the relator, nor did it discharge or

satisfy the said judgment or any part thereof. 5. If it appear from the evidence in the cause that said Thomas L. Anderson, Esq., was appointed by the relator on the 3d of February, 1855, her attorney to hold for the term of two years next thereafter, and that his term of two years had expired before his receipt of said sum of $886.75 from Shoot and others, defendants in the judgment of the Hannibal court of common pleas, and that said Shoot and others, at the time or prior to the payment of the said sum to said Anderson, had notice that his said term had expired, and that he had no authority to receive for the relator, then the payment of said sum to said Anderson was not a payment to or binding on the relator, nor did it discharge the said judgment or any part thereof." Of these instructions the court gave that numbered two and refused the others. The court found for the defendants.

*Dryden* and *H. M. Jones*, for plaintiff in error.

I. Anderson's relation to the bank was that of an attorney only. Whenever he ceased to be attorney at law for the bank, all authority to act for it in any capacity ceased. The bank might at any time revoke his authority, even during the term for which he was originally appointed. The length of the term the bank determined. Whenever a revocation was made, all authority ceased. His authority was by its very nature revocable. Anderson's authority ceased with the expiration of his term of office. He was superseded by the new appointee. No further revocation was needed. We have, however, a formal resolution of the board of directors as explicit as possible. After this revocation, he had no authority whatever to act for the bank. He could not control suits of the bank, whether they had ripened into judgments or not. He ceased to be attorney for the bank. All agency whatever ceased. He was not authorized to receive payment of the judgment. Payment to him was not payment or extinguishment of the judgment. He was not authorized to control the execution in any way. He could not lawfully

order the clerk to issue it. He could not interfere to in any way control or direct the sheriff in the execution or return of the writ. The question whether Anderson was or was not entitled to his three per cent. upon the amount recovered is not involved in this case. Let it be granted that he was so entitled, that was a matter between him and the bank with respect to services already rendered. The question at issue is one of agency, of authority to represent the bank after it had done all it could to revoke the authority. All the parties, both the defendants in the judgment and the sheriff, knew that Anderson's authority had been revoked and that Dryden was the attorney of the bank. The court below decided the cause upon the ground that the bank could not revoke. It ignored all questions of notice of revocation.

*Anderson,* for defendants in error.

I. Anderson as attorney was authorized to receive the amount of the judgment. Whether he was or not, the sheriff was justified in obeying his directions. He was the attorney of record. The sheriff had no notice given him that Anderson, the attorney of record, had been superseded by any other attorney. (See Langdon v. Potter, 13 Mass. 363; 1 Dana, 425.) Anderson had a lien on the amount collected for his fee. He was entitled to deduct his fee. (Wright, 485; 11 N. H. 163; 15 Verm. 544.)

SCOTT, Judge, delivered the opinion of the court.

Under the contract with the bank for the collection of her debts, we are of the opinion that Anderson was entitled to his commission for collecting the judgment in the suit which has given rise to this controversy. As he had performed all that was necessary to receive the money, he was, under the contract, entitled to his fee, and the bank could not, by refusing to reappoint him to the office he held, deprive him of it. Anderson held a double relation to the bank—one growing out of his appointment as her attorney, and the other arising from the contract in relation to the collection of her

debts. The termination of one of these relations did not necessarily destroy the other. There need have been no misunderstanding on this subject, as the bank could have made her contracts in such way as to avoid all controversy. The interpretation we give the contract subjects the bank only to the payment of one commission, and, as between Anderson and his successor, justice would award it *to Anderson*.

But this suit is not against Anderson, but against the sheriff, who, by Anderson's order as attorney for the bank, returned the execution satisfied. The bank maintains that this return is false, that Anderson was not her attorney, and that he had no right to receive the money. Anderson, after receiving the money, tendered to the bank the amount less his commission, but she refused to take it, insisting on her right to the whole without any deduction by way of fee or commission. Anderson was the attorney for the bank, appointed for two years by a resolution of the board of directors, and obtained the judgment, on which the execution was issued, before his term expired, but did not receive the money until he was replaced by another in his office. He was the attorney of record for the bank in the suit in which the execution issued. So he was a general attorney for the bank and he was the attorney of record in the suit in which he received the money.

The attorney of record is authorized to receive the money collected on a judgment recovered by him for his client. Those dealing with such an attorney can not be affected by any private arrangements between the attorney and client by which the extent or duration of the power of the former may be limited. The books say that an attorney of record can not be changed but by an order of court. There is some policy in this rule, as by our statutes the attorney of record in some cases is made the person to receive notices. If a change of attorney can be made secretly without any notice, a door would be opened for collusion by which these statutes would be evaded and suitors might be entrapped.

There is nothing which prohibits a client from authorizing

as many persons as he pleases to receive his money, and if they do receive it, so far as he is concerned, he will be bound by their act. But if there is an attorney of record, the authorizing of another by a client to receive the money on an execution does not divest an attorney of record of his authority. The client may authorize as many as he pleases to act for him without intending to revoke any authority he has previously bestowed. So equivocal an act as an authorization to another to receive money would not be notice that the attorney of record was displaced. Had the defendant known that Dryden was the attorney of the bank at the time he paid the money to Anderson, that would have been no notice that the authority of Anderson, as attorney of record had been revoked. No opinion is given on the question whether an attorney of record can be changed otherwise than by leave of the court. In my opinion, there is no evidence here that Anderson's authority as attorney of record had been recalled such as should affect any one dealing with him in that character.

NAPTON, Judge, concurs in affirming the judgment.