## SARGENT *v.* KINDRED, (two cases.)

*(Circuit Court, D. North Dakota. March 3, 1892.*

1. ADMISSION OF TERRITORIES—TRANSFER OF CAUSES.

The proviso to the enabling act of February 22, 1889, (25 St. c. 180, § 23,) admitting North Dakota, South Dakota, Montana, and Washington into the Union, that transfers of actions pending in the territorial courts shall not be made to the federal courts except upon written request of one of the parties filed in the proper court, and, in the absence of such request, such cases shall be proceeded with in the proper state court, was intended to permit parties to proceed in the state courts in all cases where such courts have concurrent jurisdiction, unless one of the parties invoked the jurisdiction of the federal courts in cases of a federal character.

2. SAME—APPLICATION.

The "proper court" in which to file a request for a transfer is the court where the files and records of the case are found at the time the request is to be filed.

3. SAME—TIME OF MAKING.

The request for a transfer cannot be filed at any time before trial, but must be made before the party making the request has voluntarily and actively invoked the jurisdiction of the state court. Defendant, by submitting to the state court a motion for continuance, and an order setting the cause for trial at a following term, loses his right of transfer.

At Law. Two actions. Motion to remand. Granted.

*W. F. Ball,* for plaintiff.

*Seth Newman,* for defendant.

Before THOMAS, District Judge.

THOMAS, District Judge. At the time the state of North Dakota was admitted into the Union, on the 2d day of November, 1889, these two actions at law were pending and at issue between the above-named parties in the territorial district court in and for Cass county, D. T. Both actions were regularly upon the jury calendar for trial in the state court. The district court in and for Cass county, state of North Dakota, became the successor of said territorial court for the trial and determination of such cases as were properly transferable to that court by operation of law. From the transcript of these cases, filed in this court, it appears that both of the cases were properly upon the jury calendar for trial in the state court after the admission of the state, and that at the June term of the state court for 1890 the defendant made a motion in each case, based upon affidavits, for continuance over that and to the

next succeeding term. It is admitted that the motions were resisted by the plaintiff, but notwithstanding the court granted the motions, and ordered each case to stand on the peremptory call on the first day of the next term. It also appears that at the next term, and before the commencement of the trial, in each case, the defendant filed in open court a request in writing, in due form, for a transfer of said cases to this court, a transcript of the record in each case having been filed in this court, showing that at the time of the commencement of these actions the plaintiff was a citizen of the state of Illinois, and at the time of the filing of said request by the defendant was a citizen of Illinois; that the defendant, Charles F. Kindred, at the time of the commencement of these actions, was a citizen of the state of Minnesota, and at the time of filing the request was a citizen of the state of Pennsylvania; and that the matter in dispute in each case exceeds the sum of $2,000, as required by statute. The plaintiff now moves to remand the cases to the state court, for the reason that this court has no jurisdiction of the actions, or either of them.

The determination of this matter involves the construction of section 23, c. 180, of the act of congress approved February 22, 1889, entitled:

"An act to provide for the division of Dakota into two states; to enable the people of North Dakota, South Dakota, Montana, and Washington to form constitutions and state governments, and to be admitted into the Union on an equal footing with the original states; and to make donations of public lands to such states."

Section 21 of said act provides for the creation and organization of the district and circuit courts of the United States, and confers upon said courts, and the judges thereof, respectively, the same powers and jurisdiction as are possessed by the circuit and district courts and the judges of the United States courts. Section 22 provides for the disposition of cases pending on appeal or writ of error in the supreme court of the United States and in the supreme court of the territory, and for the prosecution of appeals and writs of error from judgments of the supreme court of the territory rendered prior to the admission of the state. Section 23 provides that the circuit and district courts of the United States, respectively, shall be the successors of the supreme court and district courts of the territory in all cases, proceedings, and matters pending in the supreme or district courts of the territory at the time of the admission of the state into the Union, and arising within the limits of said state, whereof said United States courts might have had jurisdiction under the laws of the United States, had such courts existed at the time of the commencement of such cases. It also provides, in the second clause of said section 23, that the courts created by the state of North Dakota shall be the successors of the supreme and district territorial courts in respect to all other cases, proceedings, and matters pending in the supreme or district courts of the territory at the time of the admission of the state, and arising within the limits of said proposed state. It also provides that all files, records, indictments, and proceedings relative to any such case shall be transferred to said circuit, district, and state

courts, respectively, and the same shall be proceeded with therein in due course of law. It also provides that no writ, action, indictment, case, or proceeding pending at the time of the admission of the state shall abate by such admission. Then comes the proviso, which reads as follows:

"Provided, however, that in all civil actions, cases, and proceedings in which the United States is not a party, transfers shall not be made to the circuit and district courts of the United States except upon the written request of one of the parties to such action or proceeding, filed in the proper court; and, in the absence of such request, such cases shall be proceeded with in the proper state court."

This proviso is peculiar to this enabling act. I do not find it, or a similar provision, in any other enabling act. In order to ascertain the meaning of congress in adding this proviso, we may look to the defects, if any, in other acts, relative to the admission of states, and the remedy proposed. A late expression of the law of congress relating to the disposition of pending cases in territorial courts, on the admission of the territory into the Union, is found in the act of congress of June 26, 1876, in respect to the administration of justice in Colorado. 19 St. p. 61. That act was the most perfect and specific, relating to the disposition of pending cases, of any that had been passed by congress up to that time. The enabling act for the admission of this state, with the other states named therein, relative to the administration of justice and the disposition of pending cases at the time of the admission of the state, is modeled after the Colorado act of June 26, 1876, but is more specific in its terms. Section 8 of the Colorado act was specific as to the disposition of cases of a federal character, and is substantially the same as the first clause of our section 23. Upon a careful reading of our section 23, it will be found that section 8 of the Colorado act is embodied in it, in terms, and in addition specific provision is made in said section 23 for the disposition of cases not of a federal character, and also specific provisions for the purpose of preventing the abatement of any writ, action, indictment, case, or proceeding at the time of admission. Nothing in section 23 of our act, down to the proviso, is left for construction, as was the case in the Colorado act relative to cases not of a federal character, and the survival of actions. Section 23, together with sections 21 and 22, embodies all of the provisions of the Colorado act of June 26, 1876, and expresses in clear terms provisions relative to pending cases not of a federal character, which seem to have been implied and left to the construction of the courts in the Colorado and prior enabling acts. *Benner* v. *Porter,* 9 How. 235; *Ames* v. *Railway Co.,* 4 Dill. 252.

What was the purpose of congress in adding to section 23 the proviso above quoted? By the Colorado act of June 26, 1876, all cases of a federal character were at once, on the admission of the state, transferred to the United States courts. Cases of a federal character may be such by reason of parties, as where the United States or federal corporations are a party, or because they arise under the constitution or laws of the United States, or because of citizenship, without respect to subject-matter.

*Ames* v. *Railway Co.*, *supra.* If the federal character of the case appeared in the pleadings or record, under the Colorado act, no discretion was left to the parties as to the tribunal to which they would submit pending cases, although both parties might desire to have their cases tried in the state court, where such court had concurrent jurisdiction with the federal courts. The purpose of congress in adding this proviso to section 23 was to remedy this defect, and to permit parties to proceed in the state courts, in all cases where such courts have concurrent jurisdiction, unless one of the parties invoked the jurisdiction of the federal courts in cases of a federal character. The fact, judicially declared, of an unconditional admission of a territory as a state, and the erection of federal courts therein, and the extension of the laws of the United States over the same, is, *ipso facto*, to extinguish the territorial government, and with it the territorial courts of the general government. *Benner* v. *Porter*, *supra; Ames* v. *Railway Co.*, *supra.* A provision for the transfer of pending cases in the territorial courts was therefore necessary, upon the admission of the state. Congress made such a provision in and by sections 21–23 of the enabling act for the admission of this state, and the state of North Dakota consented to receive jurisdiction of all cases of which its courts have exclusive and concurrent jurisdiction under its constitution and laws. Had this court existed at the time of the commencement of these actions, it might have had jurisdiction thereof; the plaintiff being a citizen of Illinois and the defendant then a citizen of Minnesota, the matter in dispute in each case exceeding $2,000. *Fales* v. *Railway Co.*, 32 Fed. Rep. 673; *Amsinck* v. *Balderston*, 41 Fed. Rep. 641; *Burck* v. *Taylor*, 39 Fed. Rep. 581; *Kansas City & T. R. Co.* v. *Interstate Lumber Co.*, 37 Fed. Rep. 3. They were proper cases to transfer to this court upon the filing of a written request by either party, in due form, in the proper court.

Two questions are involved in these motions: *First*, were the requests filed in the proper court? and, *second*, were they filed in time?

As there is no express provision of the statute defining the proper court, the meaning must be determined by construction, in view of the other provisions of the statute. I am of the opinion that the "proper court" is that court where the files and records of the case are found at the time the request is to be filed; that court whose clerk has the custody of the files and records, and who can transfer the same to the federal court; and that the requests in this case were filed in the "proper court." It was evidently the intention of congress to allow either party to an action of a federal character to transfer the case to the United States court upon compliance with the statute; and it must be presumed, in the absence of any expressed intention to the contrary, that congress intended that parties should have a reasonable time and opportunity to file such requests. If a party is compelled to file such request in the territorial court, or, upon failing to do so, submit to the jurisdiction of the state court which is made the successor of the territorial court, his time is unreasonably and unnecessarily limited, whereas, if he may file his request in the state court, he is afforded a fair and reasonable time and oppor-

tunity of making his election between the state and federal courts. This view seems reasonable, and consistent with the spirit and reason of the statute, and is adopted by this court, in harmony with the implied opinion in *Ames* v. *Railway Co.*, *supra*, and the decisions in *Carr* v. *Fife*, 44 Fed. Rep. 713; *Kenyon* v. *Knipe*, 46 Fed. Rep. 309.

Were the requests in these cases filed in time? There is no express limitation of the time in the proviso or in the statute. The statutes relative to the removal of causes from the state courts are not applicable to this class of transfers. By the enabling act the survival and disposition of all cases pending in the territorial courts were provided for. The laws of the United States were given force and effect immediately upon the admission of the state, and the federal courts created and established. By the constitution of the state of North Dakota, such courts were created and established. The laws of the territory were adopted as the laws of the state, so far as applicable, and the consent of the state given to receive and accept jurisdiction of pending cases by these courts, to the extent of their jurisdiction. By the operation of law, these cases were immediately transferred to the state district court in and for Cass county; and in the absence of a request, duly filed, to transfer the same to this court, by either party, that court had jurisdiction to proceed and determine. The federal character of these cases does not appear in the pleading made and filed in the territorial court, or as they were in the state court, prior to the filing of the request to transfer to this court. But, as now appears by the transcript of the record filed in this court, they are of a federal character, and this court might have had jurisdiction thereof, if it had existed when these actions were commenced. It was proper to make clear and show by written requests, as was done in both of these cases, that they were in fact of a federal character. *Kenyon* v. *Knipe*, *supra*. But the question recurs, when must the request be filed? Can it be filed at any time before the trial, as contended by defendant's attorney, although the party so filing the request has, prior thereto, voluntarily and actively invoked the jurisdiction of the state court in the action? I cannot accept this contention of the learned counsel for the defendant. At the time of the admission of the state, this defendant had the right to submit to the jurisdiction of the state court, or file a proper request and have the cases transferred to this court; but he could not do both. He was then placed in a position where he must, before taking active steps in these actions, determine to which tribunal he would submit. Silence or passive inaction in such cases, for a reasonable time, perhaps, would not have estopped him; but any decisive action by which he actively invoked the jurisdiction of the state court, with knowledge of his rights and of the fact, must necessarily have determined his election to remain in and submit to the jurisdiction of that court. This well-recognized common-law principle is peculiarly applicable in the construction of the statute in question, in relation to the point here involved. The case of *Ames* v. *Railway Co.*, *supra*, construing the Colorado act of June 26, 1876, decided by Judge DILLON, and concurred in by Justice MILLER, is in point. On June 26, 1876, a bill was filed in the territorial court of Colorado, by

Ames *et al.*, for the foreclosure of a mortgage and the appointment of a receiver. An answer by the defendant and a replication by the plaintiffs were also filed in the territorial court. The motion was made in the territorial court for the appointment of a receiver, which was resisted. The motion was pending and undecided when the state was admitted, on the 1st day of August, 1876, and was decided by the state court early in August, and a receiver appointed by that court. The receiver was unable to obtain possession of the property; and the state court, on application of the plaintiffs, ordered out a writ of assistance to put the receiver in possession. The pleadings did not show citizenship of the plaintiffs, and for that reason it did not appear to be a case of federal character. On October 24, 1876, the plaintiffs caused to be filed with the clerk of the state court an affidavit showing citizenship of plaintiffs, and the solicitors for plaintiffs gave notice to the clerk that the case was transferred to the federal court; and it would appear from the opinion of Judge Dillon that the files and records were transferred to the federal court. A motion to docket the case in the federal court was made before Judge Dillon. The court dismissed the motion upon the ground that the plaintiffs had, by invoking the action of the state court in obtaining an order for the appointment of a receiver, and subsequently procuring a writ of assistance, elected to remain in the state court, and that such election was irreversible. On this point Judge Dillon said:

"If the federal character of a pending cause does not thus appear, the court in which it is pending may rightfully proceed therein after the admission of the state, at least until it is shown to the court that it is one of federal cognizance. In the present cause the pleadings did not show that it was one of federal character, as there was no averment in the bill of complaint of the citizenship of plaintiffs. As the cause was in the court, and the court was in existence, and the federal character of the cause did not appear, it follows that the court had jurisdiction to act therein after the admission of the state. It is contended by the defendant company that the complainants have elected to remain in the state court, and that, having done so, they are bound thereby, in virtue of the common-law principle that an election once deliberately made is binding and irreversible. In other words, after the 1st day of August, the plaintiffs could have taken steps to show the federal character of the cause, and arrested all further action of that court. Instead of doing this, they invoked the continued exercise of the jurisdiction and powers of that court, and obtained in August an order appointing a receiver, and subsequently procured an order for a writ of assistance, which was issued. After having, with knowledge of all the facts as to jurisdiction, done this, can they afterwards change the forum? And, if so, what limitation in point of time exists, and can it be exercised down to the time of final hearing? It is my judgment, in a case whose federal character does not appear of record, that the party who, with knowledge of all the facts, wishes the case to go to the federal court, under section 8 of the act of June 26, 1876, must take his election before voluntarily invoking the action and power of the court; otherwise, he is concluded from afterwards electing to reveal its federal character, and have a transfer by virtue of the last-mentioned act. The case, by his consent and action, has become one belonging to the local court, and can only be removed therefrom, if at all, under the removal acts applicable generally to the transfer of causes from the state to the federal courts. It may be true that the plaintiff can, like other suitors elsewhere, have the benefit of the removal

acts, if he can bring his case within them; but it is not necessary to determine this point. The result of these views is that, as the plaintiffs, after the admission of the state, not only voluntarily submitted to the action of the local court, but invoked it and obtained it, they could not afterwards transfer the cause on affidavits filed with the clerk of that court, in the manner here attempted."

I am unable to distinguish this case, on principle, from the cases at bar. In that case the plaintiffs had a right to show the federal character of their case before they invoked the jurisdiction of the state court, and have the files and records transferred to the United States circuit court. But they made their election to remain in the state court, and lost the right to invoke the jurisdiction of the federal court by actively invoking the jurisdiction of the state court. If the pleadings in that case had shown that it was a case of federal character, it would have been transferred to the federal court by operation of law, but, because the pleadings failed to show the federal character of the case, it went to the state court; and Judge DILLON holds that the state court had jurisdiction of the case. If the plaintiffs in that case had shown that the case was of a federal character in the state court, before actively invoking the jurisdiction of that court, they might have had their case transferred to the federal courts; or in other words, upon showing in the state court that the case was in fact of a federal character, the case would have gone to the federal court. There is no difference in principle between that case, upon the facts disclosed, and the case at bar. Plaintiffs had an election to remain in the state court, or make a proper showing and invoke the jurisdiction of the federal court. The proviso in section 23 of our act makes specific provisions for, not only cases of that character, but of all cases where the state court has concurrent jurisdiction with the federal court; and either party may make, by virtue of that proviso, in the state court, the proper showing before actively invoking the jurisdiction of the state court, and have his case transferred to the federal court, if it is in fact of a federal character, and request the state court to transfer it to the federal court. In the case at bar the defendant had the right to make the proper showing, and file his request and have these cases transferred to this court. He elected to remain in the state court, and lost the right of transfer, by actively invoking the jurisdiction of the state court, knowing his rights and the facts, and by submitting to the state court the motions for a continuance at the June term for 1890, and submitting to the order made by that court for a continuance and the setting of the cases for trial upon the peremptory call at the following term of that court.

These views are in accord with the following decisions: *Wing* v. *Railway Co.*, (S. D.) 47 N. W. Rep. 530; *Murray* v. *Mining Co.*, 45 Fed. Rep. 387.

It follows that both of these cases must be remanded to the state court; and it is accordingly so ordered.