CHOCTAW, O. & G. R. CO. v. BURGESS.

No. 631, Ind. T.    Opinion Filed May 13, 1908.

(95 Pac. 606.)

**REMOVAL OF CAUSES—Admission of Territory—Transfer of Causes —Waiver of Right.** The Oklahoma enabling act (Act June 16, 1906, c. 3335, section 16, 34 Stat. 276) provides that "all cases pending in the United States Court of Appeals in the Indian Territory arising under the Constitution, laws, or treaties of the United States, . * * * and in cases of diversity of citizenship where there shall be more than two thousand dollars in controversy, exclusive of interest and cost, shall be transferred to the proper United States circuit or district court for proper disposition: Provided, that such transfer shall not be made in any case where the United States is not·a party except on application of one of the parties in the court in which the case is pending, at or before the second term of such court, after the admission of said state." Where such case is transferred to the Supreme Court of this state by operation of such provision, and is regularly assigned for hearing at the first term of said court, and the attorney of record for the plaintiff having had notice thereof, and said cause having been regularly reached for trial on the calendar, and no one appearing for said plaintiff in error, but the attorney of record appearing for defendant in error, and said cause then and there being regularly submitted for final decision, said plaintiff in error waives its right to thereafter move for said cause to be transferred to the proper United States circuit or district court. This constituted an election to proceed in the state courts, and precluded the plaintiff in error from thereafter transferring said cause to such federal court for review.

(Syllabus by the Court.)

*Error to the United States Court for the Eastern District of the Indian Territory.*

Action by Myra Burgess against the Choctaw, Oklahoma & Gulf Railroad Company. Judgment for plaintiff. Defendant brings error. Motion to transfer cause to United States Court denied.

This cause came to this court from the United States Court of Appeals for the Indian Territory by virtue of the terms of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 267), being one of the causes pending on the docket of said court not finally disposed of at the admission of the state into the Union. The petition or complaint of the defendant in error, the plaintiff in the court below, alleges that the plaintiff in error, the defendant in the *nisi prius* court, is a corporation duly organized and existing and doing business in the Indian Territory under and by virtue of the laws in force in said territory and as such is authorized and empowered to sue and be sued in its corporate name. It is further alleged in said complaint or petition that the plaintiffs Myra B. Burgess and W. N. Burgess, her husband, and each of them, are citizens of the United States, residing in the Southern District of the Indian Territory.

On the 9th day of January, A. D. 1908, under order of this court, the docket was set and assignment of cases made for the first term of this court, this cause being set for hearing on January 21, 1908, and notice of such setting was given to the attorneys of record for both the plaintiff and defendant in error. On the 21st day of January, 1908, this cause in due course was reached on the calendar for trial, no attorney for the plaintiff in error appearing at that hearing, but the attorney of record, A. C. Cruce, appeared for the defendant in error, and said cause was duly submitted for the final determination and judgment of said court.

Thereafter, on the 24th day of January, A. D. 1908, plaintiff in error filed its petition for removal, alleging that by virtue of the terms of the enabling act, approved June 16, 1906, said cause

should be removed to the United States Court for the Eastern District of the State of Oklahoma for final disposition, and alleging that at the time of the institution of said suit in the lower court, the defendant therein, the plaintiff in error in this court, was, ever since has been, and still is, a corporation organized under and by virtue of a certain act of Congress of the United States, to-wit, an act entitled an act to authorize the purchase of the property and franchises of the Choctaw Coal & Railway Company to organize a corporation and to confer upon the same all the powers and privileges and franchises vested in that company, approved August 24, 1894 (Act Aug. 24, 1894, c. 330, 28 Stat. 502), that its principal place of business is and at all times herein mentioned has been in the city of Philadelphia, and that it has been at no time a resident of the Indian Territory or of the state of Oklahoma. The petitioner further avers that this is a civil case pending at the time of the organization of the state of Oklahoma, aforesaid in the United States Court of Appeals for the Indian Territory, and arose under the Constitution and laws or treaties of the United States within the meaning of the second section of an act of Congress of the United States of March 3, 1875 (18 Stat. 470), c. 137, as amended March 3, 1887 (24 Stat. 553), c. 373, and August 3, 1888, and section 16 of the enabling act. At the same time the plaintiff in error tendered a good and sufficient bond. Thereafter, on the 29th day of January, A. D. 1908, plaintiff in error filed an amendment to said petition, wherein it is averred that this is a controversy between citizens of different states, and that more than $2,000, exclusive of interest and costs, is involved therein.

All of the foregoing facts appear as a matter of record.

On the same date plaintiff in error, through its attorney, Thomas R. Beman, made application in open court to have the name of C. O. Blake substituted for that of C. B. Stuart as attorney of record, which application was granted. Thereafterward, on the 2d day of March, 1908, the said Thomas R. Beman filed his affidavit in said cause, and, among other things, deposed:

"That C. O. Blake, Esq., of El Reno, Okla., is the attorney of the above-named Choctaw, Oklahoma & Gulf Railroad Company, and that affiant is assistant attorney of said company; that as such assistant attorney affiant was given charge of this cause, and filed in this court on January 24, 1908, and prior to the opening of its session for that date, a petition and bond for the removal of said cause to the United States Circuit Court for the Eastern District of the State of Oklahoma; * * * that during the argument on said motion [referring to the *Hendricks Case*] in this court on said date affiant for the first time learned that the cause in which this affidavit is filed had theretofore, on the 21st day of January, 1908, been submitted to said court upon argument made by the counsel for the appellee; and that notice had been given to the counsel of record·in this case, C. B. Stuart, Esq., of McAlester, Ind. T., now state of Oklahoma, being attorney of record for said defendant railroad company [appellant], which said cause was originally filed in the Court of Appeals for the Indian Territory, and submitted to that court for its decision [said cause having been submitted to the United States Court of Appeals for the Indian Territory for final determination prior to the admission of the state into the Union, but remained undetermined on such date, and no change having been made in the attorney of record in said cause, as well as the other causes pending in this court to which the plaintiff in error was a party, transferred from said court from that time until said January 24, 1908]. Whereupon receiving such information affiant requested this honorable court to substitute said C. O. Blake in each of said causes in place of C. B. Stuart, and affiant then and there advised this court that neither affiant nor C. O. Blake had received any notice of this cause for submission," etc.

Thereafter, on the 17th day of March, A. D. 1908, there was filed with the clerk of this court the affidavit of A. C. Cruce, as one of the attorneys of record for the defendants in error, wherein he states:

"That he is informed and believes that Thomas R. Beman, whose affidavit has heretofore been filed in this court, was at the time of the trial of this cause in the court below the assistant attorney of the said Choctaw, Oklahoma & Gulf Railroad Company, and that he has continuously held said position up until the

present time; that during the time the Honorable Chas. B. Stuart was the general attorney of the appellant in Oklahoma and Indian Territory the said Beman was the assistant attorney of the appellant under the said Stuart. The affiant also states that a number of other cases wherein this defendant was appellant were pending in the United States Court of Appeals for the Indian Territory on the date that said territory was admitted into the Union as a state; that in all of such cases that came into this court as the successor of the United States Court of Appeals for the Indian Territory the said Stuart was the attorney of record for the appellant; and that the name of said Stuart in all of such cases, including this cause, appeared as sole attorney for the appellant, and that in none of said causes was any change of attorney made upon the records of this court, nor any suggestion made to the clerk of this court for any such change, until after this cause was argued and submitted to this court on the 21st day of January, 1908. * * * * The affiant further states that on the 21st day of January, 1908, as the attorney for the appellee, he appeared in this court, and that when this cause was regularly reached on the call of the docket of this court on the afternoon of said date he made an oral argument before this court, in which he attempted to refute the contention made by the appellant in its brief heretofore filed in the United States Court of Appeals for the Indian Territory; that at no time during said argument, or at any time prior thereto, was any objection made by the appellant to the hearing of this cause by this court, and no motion or request of any kind was made to this court asking that this cause be transferred to the United States Circuit Court for hearing. Affiant further states that at the conclusion of said argument this cause was finally submitted to this court for final determination upon the said oral arguments and briefs heretofore filed herein, and that the same was taken under consideration by this court."

WILLIAMS, C. J. (after stating the facts as above). The only question to be determined in this court is whether or not the plaintiff in error has waived its right to have this cause transferred to the United States Circuit Court for the Eastern District of the State of Oklahoma. Section 16 of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 276) provides:

"All cases pending in the Supreme and district court of Oklahoma Territory arising under the Constitution, laws, or treaties of the United States, * * * and in all cases where there is a controversy between citizens of said territories prior to the admission and citizens of different states, or between a citizen of any state, and citizens or subjects of any foreign state or country, and in which cases of diversity of citizenship there shall be more than two thousand dollars in controversy, exclusive of interest and costs, shall be transferred to the proper United States circuit or district court for final disposition: Provided, that said transfer shall not be made in any case where the United States is not a party except on application of one of the parties in the court in which the cause is pending, at or before the second term of such court, after the admission of said state, supported by oath, showing that the case is one which may be so transferred, the proceedings to effect such transfer, except as to time and parties, to be the same as are now provided by law for the removal of causes from a state court to a circuit court of the United States. * * * *"

In the case of *Sargent v. Kindred,* 5 N. D. 8, 63 N. W. 151, the court says:

"In the order setting aside the judgment it is recited *inter alia* that 'at the time of the trial of said action the same had been removed to the circuit court of the United States, and this court had no jurisdiction to try and determine the same.' This point is urged in this court. The above recital seems to contradict the record. The record shows that a request was filed by the defendant under the provisions of the enabling act under which this state was admitted into the Union, for such a transfer of the case, and the request was denied. Furthermore no such claim is made in the application to set aside the judgment, and it is not clear that that point is in the case. But in no event is it well taken. The action was commenced in 1887 in the district court of Cass county in the late territory of Dakota. There was diverse citizenship, the defendant not being a resident of such territory; and, had North Dakota been a state at the time, the action could have properly been transferred to the United States Circuit Court. Under the terms of the enabling act, after North Dakota became a state cases in that condition might, upon request filed, be transferred to the proper federal circuit court. But it has frequently

been held under such circumstances that any action in the case after statehood by which a party submits himself to the jurisdiction of the state court, and the state court acts thereon, precludes such party from subsequently removing the case to the federal court. *Gull River Lumber Co. v. School District No. 39,* 1 N. D. 408, 48 N. W. 340; *Wing v. Railroad Company,* 1 S. D. 455, 47 N. W. 530; *Ames v. Railroad Co.,* 4 Dill. (U. S.) 257, Fed. Cas. No. 324; *Gaffney v. Gillette,* 4 Dill. (U. S.) 264, Fed. Cas. No. 5,168; *Carr v. Fife* (C. C.) 44 Fed. 713; *Murray v. Mining Co.* (C. C.) 45 Fed. 387. The state court, as the successor of the territorial court, acquired jurisdiction of this case in November, 1889, subject to be divested as in the enabling act specified. In June, 1890, the defendant moved upon affidavits for a continuance of the case, and such motion was granted. At the December term, 1890, this was repeated, and the motion denied. Thereupon the request to transfer to the Federal Circuit Court was filed and denied. If the right to the transfer depended upon the decision of any question of fact, such a question as the question of diverse citizenship or the like, the filing of the application at once divested the state court of all jurisdiction to determine that question, and consequently of all jurisdiction of the case. *Miller v. Sunde,* 1 N. D. 1, 44 N. W. 301, and cases there cited. But the court was bound to take notice of its own records, and those records showed conclusively that the defendant had waived his right to have the case transferred. It was as if a party should file a petition for removal on the ground of diverse citizenship and at the same time admit upon the record that no diverse citizenship existed. With the admission of the nonexistence of the only fact that could give the federal court jurisdiction standing upon the record, the state court could not be ousted of jurisdiction, as jurisdiction must rest somewhere. The order setting aside the judgment cannot be sustained upon the ground that the case had been transferred to the federal court."

In the case of *Sargent v. Kindred* (C. C.) 49 Fed. 489, the court says:

"Were the requests in these cases filed in time? There is no express limitation of the time in the proviso or the statute. The statutes relative to removal of causes from the state courts are not applicable to this class of transfers. By the enabling act the survival and disposition of all cases pending in the territorial courts

were provided for. The laws of the United States were given force and effect immediately upon the admission of the state and the federal courts created and established. By the Constitution of the state of North Dakota such courts were created and established. The laws of the territory were adopted as the laws of the state so far as applicable, and the consent of the state given to receive and accept jurisdiction of pending·cases by these courts to the extent of their jurisdiction. By the operation of law these cases were immediately transferred to the state district court in and for Cass county; and in the absence of a request, duly filed, to transfer the same to this court, by either party, that court had jurisdiction to proceed and determine. The federal character of these cases does not appear in the pleading made and filed in the territorial court, or as they were in the state court prior to the filing of the request to transfer to this court. But, as now appears from the transcript of the record filed in this court, they are of a federal character, and this court might have jurisdiction thereof, if it had existed when these actions were commenced. It was proper to make clear, and show by written requests, as was done in both of these cases, that they were in fact of a federal character. *Kenyon v. Knipe* (C. C.) 46 Fed. 309. But the question recurs, when must the request be filed? Can it be filed at any time before the trial, as contended by defendant's attorney, although the party so filing the request has prior thereto voluntarily and actively invoked the jurisdiction of the state court in the action? I cannot accept this contention of the learned counsel for the defendant. At the time of the admission of the state this defendant had the right to submit to the jurisdiction of the state court, or file a proper request and have the cases transferred to this court; but he could not do both. He was then placed in a position where he must, before taking active steps in these actions, determine to which tribunal he would submit. Silence or passive inaction in such cases for a reasonable time perhaps would not have estopped him; but any decisive action by which he actively invoked the jurisdiction of the state court, with knowledge of his rights and of the fact, must necessarily·have determined his election to remain in and submit to the jurisdiction of that court. This well-recognized common-law principle is peculiarly applicable to the construction of the statute in question in relation to the point here involved. The case of *Ames v. Railway Company*, 4 Dill. (U. S.) 252, Fed. Cas. No. 324, construing the Colorado

Choctaw, O. & G. R. Co. v. Burgess.

act of June 26, 1876, c. 147, 19 Stat. 61, decided by Judge Dillon and concurred in by Justice Miller, is in point. On June 26, 1876, a bill was filed in the territorial court of Colorado by Ames and others for the foreclosure of a mortgage and the appointment of a receiver.. An answer by the defendant and a replication by the plaintiffs were also filed in the territorial court. The motion was made in the territorial court for the appointment of a receiver, which was resisted. The motion was pending and undecided when the state was admitted on the 1st day of August, 1876, and was decided by the state court early in August, and a receiver appointed by that court. The receiver was unable to obtain possession of the property; and the state court, on application of the plaintiffs, ordered out a writ of assistance to put the receiver in possession. The pleadings did not show citizenship of the plaintiffs, and for that reason it did not appear to be a case of federal character. On October 24, 1876, the plaintiffs caused to be filed with the clerk of the state court an affidavit showing citizenship of plaintiffs, and the solicitors for the plaintiff gave notice to the clerk that the cause was transferred to the federal court, and it would appear from the opinion of Judge Dillon that the files and records were transferred to the federal court. A motion to docket the case in the federal court was made before Judge Dillon. The court dismissed the motion on the ground that the plaintiff had, by invoking the action of the state court in obtaining an order for the appointment of a receiver, and subsequently procuring a writ of assistance, elected to remain in the state court, and that such election was irreversible."

Special attention is directed to the language in the foregoing, where it is said: "Can it be filed at any time before the trial, as contended by defendant's attorney, although the party so filing the request has prior thereto voluntarily and actively, invoked the jurisdiction of the state court in the action?" In the cases where the courts have held that the right to transfer to the federal court had been waived, it was where some preliminary act had been taken by the state court prior to the final determination or closing of the trial of the case. In this case, before this motion to transfer was filed, the case had been called for trial and submitted for final judgment.

In the case of *Hecht v. Metzler* (C. C.) 82 Fed. 343, the court said:

"But an election of forum once made would be binding and irrevocable. So long as no proceeding in the action was had in the state courts, it could not be contended that an election had been made. When the plaintiff appealed to the Supreme Court of the state, he elected to further prosecute the case in the state courts. The defendant was then required to make his election. A failure to then remove the case must be taken as a waiver of right."

The petition for removal filed on the 24th day of January, A. D. 1908, as amended on the 29th day of January, A. D. 1908, in view of the allegations in said petition as amended, construed in connection with plaintiff's complaint in the court below, the defendant in error here, and other matters of record in this case, it appearing that said cause had theretofore, to-wit, on the 21st day of January, 1908, been regularly submitted for final determination by this court, notice having theretofore been had on the attorney of record of all parties thereto on the 9th day of January, A. D. 1908, is all that we can properly consider. The question is attempted to be raised by the affidavit filed on the part of the plaintiff in error that the attorney of record for said plaintiff in error was not in fact at that time the attorney for said plaintiff in error; and, if it is competent to raise a question of fact to be determined by this court before we conclude as to whether or not there is a waiver of the right to have this case removed to the federal court, then it is not a question for this court to pass on, but it is proper to remove same to the federal court, and such question of fact can then and there be determined. The plaintiff and defendant in error, however, took notice of the orders of this court and the setting of the dockets thereof for the first term after the admission of the state into the Union.

In the case of *Walton v. Sugg*, 61 N. C. 98, 93 Am. Dec. 580, the court says:

"In that case the affidavit of the attorney was filed, and in

that it was stated that at the time of service of notice on him he was not the attorney, but had been paid his fee and discharged, and that he so informed the marshal when he served the notice. Yet the notice was held to be sufficient. If the opposite party wish to be present at the taxation of costs, and doubt if the other party will give him notice of it, he may obtain from the clerk of the rules a rule to be present at the taxation. In fair practice, however, it is usual to give notice of taxation without being ruled to do so. 1 Arc. Pr. 225."

In the case of the *Unted States v. Curry,* 6 How. (U. S.) 106, 12 L. Ed. 363, the attorney who represented the plaintiff in the trial below, after recovering judgment, was by his client paid off and discharged. No permission was obtained from the court to withdraw from the case, and no change was made upon the record of the court as to the attorney authorized to represent the plaintiff. After the attorney withdrew from the case a citation in error was served on him, and he at the time advised the marshal that he had withdrawn from the case and was not authorized to accept service. Chief Justice Taney held the service good, however, in the following language:

"So, too, as to the service of the citation on the attorney. It is undoubtedly good, and according to the established practice in courts of chancery. No attorney or solicitor can withdraw his name after he has once entered it on the record without the leave of the court. And while his name continues there, the adverse party has the right to treat him as the authorized attorney or solicitor, and the service of notice on him is as valid as if served on the party himself. And we presume no court would permit an attorney who had appeared at the trial, with the sanction of the party, express or implied, to withdraw his name after the case was finally decided. For if that could be done, it would be impossible to serve the citation where the party resided in a distant country, or his place of residence was unknown, and would in every case occasion unnecessary expense and difficulty, unless he lived at the place where the court was held. And, so far from permitting the attorney to embarass and impede the administration of justice by withdrawing his name after trial and final decree, we think the court should regard any attempt to do so as open to just rebuke."

Again, in the case of *Walton v. Sugg, supra,* the court says:

"Pending a suit the client cannot change his attorney without leave of the court."

In the case of *Grant v. White,* 6 Cal. 56, the court says:

"The notice it seems was served on Mr. Kewen after his connection with the case had ceased, and the defense of it had been turned over to Mr. Crockett. To avail the defendant of this objection, there should have been a regular substitution of counsel in the mode pointed out by the statute."

In the case of *Board of County Commissioners of the Funded Debt of the City of San Jose v. Younger,* 29 Cal. 147, 87 Am. Dec. 164, the court says:

"So long as he remains attorney of record, the court cannot recognize any other as having the management of the case. If the party for any cause becomes dissatisfied with his attorney, the law points out a remedy. He may move the court for leave to change his attorney, as provided in section 10 of the act concerning attorneys and counselors."

In the case of the *State, to the Use of the Bank of Missouri, v. Hawkins,* 28 Mo. 366, the court says:

"The books say that an attorney of record cannot be changed but by an order of court. There is some policy in this rule, as by our statutes the attorney of record in some cases is made the person to receive notices. If a change of attorney can be made secretly without any notice, a door would be opened for collusion by which these statutes would be evaded and suitors might be entrapped. There is nothing which prohibits a client from authorizing as many persons as he pleases to receive his money, and if they do receive it, so far as he is concerned, he will be bound by their act. But if there is an attorney of record, the authorizing of another by a client to receive the money on an execution does not divest an attorney of record of his authority."

In the case of *Boyd v. Stone,* 5 Wis. 240, the court says:

"He was the solicitor of record, and the only one the complainant could serve his amended bill upon. Stone, then, neglecting to file his answer within 30 days, the complainant was unquestionably entitled to an order that the bill as amended be taken as confessed as to Stone and a decree of foreclosure and

sale of the mortgaged premises. It appears very clear to us that such was the proper and regular decree at this stage of the proceeding."

In the case of *Waterhouse v. Freeman et al.*, 13 Wis. 340, the court says:

"The demurrer last served by counsel, who are not attorneys of record, was properly returned by the plaintiff's attorney. He was not bound to recognize them as having anything to do with the case until they were regularly substituted for the attorneys of record. It was therefore a matter of discretion with the court, after the time for answering the amended complaint had expired, to determine upon what terms the defendants might plead."

"It is the right of every client to change his attorney at his volition by substituting a new solicitor of record. The right must be exercised, however, by application to the courts, which will hold the client to fair dealing with its officers, and may in its discretion require the clients to discharge the attorney's claim for services in the suit as a condition of substitution." (*Wilkinson v. Tilden* [C. C.] 14 Fed. 779.)

"While it is generally true that a client may change his attorney at will, he must make the substitution in a proper mode. First, he must obtain the consent of the court to the substitution. This restriction is necessary to preserve regularity in the conduct of suits, and to prevent the confusion and abuses which might ensue if a party were at liberty to change his solicitor without any control of the court. Without this restriction a solicitor might be deprived of his lien for costs, the proceedings might be delayed or entangled by repeated changes of solicitors, and the court could never know when a case is legitimately before it by the true representatives of the parties.' (Per Chancellor Sanford, Hopk. Ch. 369.) To the same effect see *Boeram v. Jerome*, 1 Wend. (N. Y.) 293; *Wolf v. Trochelman*, 5 Rob. (N. Y.) 611; *Ginders v. Moore* 1 Barn. & C. 654; *Robinson v. McClellan*, 1 How. Prac. (N. Y.) 90; *Hoffman v. Van Nostrand*, 14 Abb. Prac. (N.Y.) 336; *Stevenson v. Stevenson*, 3 Edw. Ch. (N.Y.) 340; *May v. Pike*, 4 Mees. & W. 197; *Stewart v. Common Pleas*, 10 Wend. (N. Y.) 597; *Rex v. Middlesex*, 2 Dowl. Pr. 147; *McPherson v. Robinson*, 1 Doug. 217; *Perry v. Fisher*, 6 East 549; *Margerem v McIlwaine*, 2 N. R. 509; *Sloo v. Law*, 4 Blatchf. 268, Fed. Cas. No. 12,958; *Supervisors v. Brodhead*, 44 How. Prac. (N. Y.) 426.

Generally, if the party desiring to change his attorney does so without obtaining the consent of the court and an order of substitution, the opposite party may still treat the first attorney as the acting attorney. *Powell v. Richardson,* 1 W. Bl. 8; *McPherson v. Robinson,* 1 Doug. 217; *Grant v. White,* 6 Cal. 55; *Boeram v. Jerome,* 1 Wend. (N. Y.) 293; *Trust v. Repoor,* 15 How. Prac. (N. Y.) 570; *Robinson v. McClellan,* 1 How. Prac.( N. Y.) 90.

It was the duty of the plaintiff in error to take notice of all the orders made by this court assigning said cause for trial at its first term, and it was not necessary that actual notice should be made on plaintiff in error, or its attorney, that said cause might properly stand for trial at said term. However, actual notice upon the attorney of record of plaintiff in error was sufficient notice, and, if said plaintiff in error had discharged said attorney prior to that time without substituting another as attorney of record, it did so at its peril, and it is legally bound by every notice that was served or brought to the attention of said attorney of record. So in this case we have a case that was properly heard and submitted for final judgment. In the cases heretofore referred to and cited as to the question of waiving the right of removal they involve preliminary motions and actions prior to the time of the final trial. This case is a stronger case of waiver than any heretofore found in the books. The plaintiff in error is bound by its constructive notice that this cause was properly set for trial on the 21st day of January, A. D. 1908, and is concluded by the notice that was given its attorney of record, and, nothwithstanding such notice, it permits this cause to come on for hearing, and on due call of the calendar to be submitted for final determination. We submit that prior to such final submission, if it desired that said cause should not be continued to final determination in the state court, it was its duty to elect that it should be transferred to the federal court by filing a proper application in this court, and that, failing so to do, it has made its election, and that it is irrevocable, and that this cause must continue to final judgment in this court.

Section 23 of the enabling act of North Dakota, approved February 22, 1889, c. 180, 25 Stat. 683, provides:

" * * * But no writ, action, indictment, cause or proceeding now pending or that prior to the admission of any of the states mentioned in this act shall be pending in any territorial court in any of the territories mentioned in this act shall abate by the admission of any such state into the Union, but the same shall be transferred and proceeded with in the proper United States circuit or district or state court, as the case may be: Provided, however, that in all civil actions, causes and proceedings in which the United States is not a party transfers shall not be made to the United States circuit or district courts, except on written request of one of the parties, and in the absence of such request such causes shall be proceeded with in the proper state courts."

In this enabling act there is no limitation as to the time in which this application shall be made. In nearly all of the cases construing this enabling act it was contended by the counsel seeking such removal that such party had until such case was called for trial to make application for removal, but uniformly the courts held that the very moment that such party by any act positive, express, or implied, indicated an election for such cause to remain in the state court, such election was binding and irreversible.

In the Oklahoma enabling act it is provided that transfer shall not be made in any case where the United States is not a party except on application of one of the parties in the court in which the case is pending, and at or before the second term of said court after the admission of the state into the Union. This undoubtedly is a limitation upon the time in which such application can be made. In literal terms it provides that such application may be made at any time before the termination of the second term of such court, but if prior to such time such party has by any act, express or implied, done anything that amounts to an election, he is therefore precluded from making such application for such transfer.

If the plaintiff in error's contention that it has until the expiration of the second term of this court after the admission of the state into the Union to move to transfer said cause to the federal court, regardless of what action may have been theretofore had relative to the submission of said cause, it would be necessary to hold, in effect, that no cause could with any assurance be submitted for final determination until after the adjournment of the second term. And it cannot be contemplated that Congress intended that the wheels of this court should stand still as if paralyzed until the expiration of its second term in order that parties might have opportunity up to such time to transfer proper cases to the federal court. But the reasonable conclusion is that such parties should have until the expiration of the second term to move for said transfer, unless prior to that time in law they have made an election for the same to remain in the state court, and the election once made would remain irreversible and irrevocable. These cases came to this court by operation of law, and this court came into existence and being by operation of law, and the plaintiff in error took constructive knowledge of the setting of this case, and its attorney of record had actual knowledge of the setting of the same for trial in law. When same was submitted for the final judgment of this court without objection plaintiff in error consented for this court to take jurisdiction of said cause, and when jurisdiction had been assumed under such circumstances it became complete, and the plaintiff in error is bound by the same, and cannot be heard now to reverse its election.

Motion to transfer overruled.

Dunn, Hayes, and Turner, JJ., concur; Kane, J., dissents.